Scott, J.
In regard to the effect of the former decree of the superior court of Cincinnati, which has been set up as a bar to the present action, we think it is not conclusive against the rights which the plaintiffs are now asserting. The subject matter brought directly in issue in the two cases is not *134 the same. In the former suit the plaintiffs sought to enforce certain alleged trusts, in which they claimed to be beneficially interested, under the will of Samuel Stitt. But, in this action, they set up a legal title, and claim to recover the possession of real estate, and their right to such recovery, may not depend wholly on the questions adjudicated in the formei suit.
Proceeding, then, to an examination of the case upon its merits, it is apparent that the solution of the questions presented depends, mainly, upon the construction proper to be given to the will of Samuel Stitt; the character of the estates thereby created; and the extent to which, if at all, the said Stitt, in respect to the property in controversy, died intestate.
First, then, what is the character of the estate devised by the testator to the three children of his sister Nancy, who survived him? The terms of the will are such as might create successive life estates, first in the children of his sister Nancy; secondly, in the issue of said children, so far as the same were in being at the date of the will, with remainder in tail to the issue then unborn. And the language of the will is equally sufficient to create an estate tail in the children of the testator’s sister, which, by operation of the same statute, would be converted into an estate in fee simple, in the issue of such donees in tail. The language of the statute of 1811, “to restrict the entailment of real estate,” and to which reference is made in the will, is as follows :
“ No estate in fee simple, fee tail, or any lesser estate, in lands or tenements, lying within this State, shall be given or granted, by deed or will, to any person or persons, but such as are in being, or to the immediate issue or descendants of such as are in being at the time of making such deed or will; and all estates given in tail shall be and remain an absolute estate in fee simple, to the issue of the first donee in tail.”
Now, in the construction of wills, it is a well settled rule, sanctioned alike by reason and authority, that the intention of the testator must govern, so far as the law will permit And it is quite apparent that the testator, in this case, in *135 tended to keep the estate devised in the families of his sister’s children, and their lineal descendants, without alienation, as long as the statute would permit. This intention is clearly expressed, in so many words, and must therefore control, where the terms of the devise are equally descriptive of different estates. Now, it was competent for the testator, in making his will, to carve out life estates, and devise the remainder in fee tail to the issue of any person or persons then in being. He might either make the children of his sister the donees in tail, or he could give them a life estate, with remainder in tail to their issue. And as the latter course would best effect his intention, by restraining alienation for one generation longer than the former, the will should be so construed.
It is also clear that while the testator provides for the case of the death of one or more of his sister’s children, leaving issue, before the will takes effect; yet there is absolutely no intimation of an intention to dispose of the reversionary fee simple, in the event of the failure of issue on the part of either of said children, or their issue, after the will would take effect, and before the estate devised should be converted into a fee simple by operation of the statute. The children of his sister take share and share alike, but nothing is said of cross remainders between them, or their issue; nor is this reversion otherwise disposed of; and, in respect to it, Samuel Stitt must therefore be held to have died intestate, and the reversionary fee simple, subject to the estates created by the will, passed, therefore, under the statute of descents, upon his death, to his heirs at law, who, as it happens, were the same children of his sister Nancy, who were the immediate devisees under the will.
But the questions which most materially affect the interests of the plaintiffs, Gibson and wife, arise from the fact that Mrs. Gibson is the illegitimate and sole child of Nancy Wilson, the younger, who was one of the children of the testator’s sister Nancy. Can she, as such, take under the will of Samuel Stitt, her mother’s uncle, as the “issue” of her mother? *136 And can she, under the statute of descents, inherit from the collateral kindred of her mother ?
It is clear, that according to the rule of the common law, a gift to children, sons, daughters, or issue, imports prima facie legitimate children or issue, excluding those who are illegitimate; and that “ in order to let in illegitimate children, under a gift to children, it must be clear, upon the terms of the will, or according to the state of facts at the making of it, that legitimate children never could have taken.” 2 Jarman on Wills, 140; Cartwright v. Vawdry, 5 Vesey, 530.
There is nothing apparent on the face of the will, in this case, nor in the facts existing at the time it was made, to rebut this prima facie presumption of the law. The mother of Mrs. Gibson was then in full life, and the testator might well have contemplated her subsequent marriage. But while this is conceded by counsel for the plaintiffs, it is claimed that the will in question is an Ohio will, and is not to be construed by the rules of the common law, but according to the policy indicated by our own statutes. And we should think it but reasonable that if, by the statute of descents of this State, the illegitimate child of Nancy Wilson, the younger, could, as the legal representative of her mother, have inherited the estate of the testator, she should then be regarded as the issue of her mother, within the meaning of his will. The will should be construed by the light of the statutory enactments, in view of which it must be supposed to have been made.
The acts regulating descents in this State, which were in force when this will was made, and when it took effect, were that of February, 1831, and the amendatory act of March 1, 1835. By the 12th section of the former, it was provided that “ bastards shall be capable of inheriting or of transmitting inheritance on the part of their mother, in like manner as if they had been born in lawful wedlock.” 3 Chase, 1789.
In the case of Stephenson's heirs v. Sullivant, 5 Wheaton, the supreme court of the United States, in giving a construction to this section of the statute, held that the intention of the legislature and the effect of the statute was only to give *137 the bastard a capacity to inherit directly from his mother, and not to remove his incapacity to inherit through collateral kindred, of whom he could still, legally, have none. And in accordance with this decision, the supreme court of this State, in Lessee of Little v. Lake, 8 Ohio Rep. 289, held that inheritance could not be, under this statute, transmitted from the bastard to collateral kindred on the part of the mother. The words of the statute, “ on the part of their mother,” were held to relate to the mother only, and not to include collateral relatives in the maternal line.
The statute was thereupon amended by the legislature, by the addition of the farther clause as it now stands in the act of 1853, viz.: “ And if the mother be dead, the estate of such bastard shall descend to the relatives on the part of the mother, as if the intestate had been legitimate.” This amendatory legislation was an implied recognition of the fact that the statute as it previously stood was otherwise, and it must be noted, that this amendment only confers on the bastard the power of transmitting inheritance to the relatives on the part of the mother, leaving his incapacity to inherit from them, to stand as it was.
This opinion, in Little v. Lake, was subsequently examined, and its propriety questioned, upon what seems to us to be strong grounds, by Judge Ranney, in the case of Lewis v. Eutsler, 4 Ohio St. Rep. 354; but that case was decided upon other grounds, and the decision in Little v. Lake was not, nor has it since been, overruled.
If the rule thus established be an unwise one, not founded in reason, justice, or sound policy, it is the province of legislation to make the proper change. Having both the judicial and legislative sanctions to which we have referred, we do not feel at liberty to disturb it.
The result of the application of these conclusions to the case before us, is: That Mary Ann Gibson, being the illegitimate daughter of Nancy Wilson, the younger, took nothing under the will, as the “ issue ” of her mother; and that under our statute of descents she could not inherit from her mother’s brother, William Wilson, nor from his daughter, Mary Ann *138 Wilson; and that her interest in the premises must therefore be limited to that portion of the estate which, being undisposed of by the will of Samuel Stitt, descended to her mother as one of his heirs at law, and which Mrs. Gibson inherits directly from her mother. The estate undisposed of by the will, was, as we have said, the reversionary fee simple, of which the enjoyment and use was expectant upon the failure of issue to take the particular estates carved out by the will, before their ripening into an. absolute fee simple, under the statute of entails. Upon the death of Stitt, this reversionary fee passed to his heirs at law, Nancy Wilson, Jane McNeely, and William Wilson, as tenants in common. Upon the death of Nancy Wilson, her interest in. the reversion passed, by descent, to her illegitimate daughter, Mrs. Gibson. As to two equal third parts of the property in controversy, the particular estates created by the will have been determined or failed; one by the death of Nancy Wilson, tenant for life, without legitimate issue; and one by the death of Mary Ann Wilson, the first donee in tail, also without issue. And Mary Ann Gibson having inherited the whole reversionary interest of her mother, is therefore entitled to the possession of one third of these two thirds, that is, to two ninths of the whole premises. Should the issue of Jane McNeely, who still holds the remaining third part, under the will, fail before the estate tail, given to her issue, becomes an absolute fee simple, the plaintiffs or their representatives may then demand another ninth part, thus giving them one third of the whole reversion.
Such was the judgment of the superior court of Cincinnati, which is, therefore, affirmed.
Brinkerhoee, C.J., and Peck and Gholson, JJ., concurred.